UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MICHAEL PATE,

        Plaintiff,

v.                                                  Case No. 3:10cv223/MCR/EMT

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FLORIDA INSURANCE COMPANY,

        Defendants.
_____/

**O R D E R**

Plaintiff has filed a Motion to Remand pursuant to 28 U.S.C. § 1447(c). (Doc. 9). Defendant opposes remand. (Doc. 10). On consideration of all pertinent materials before the court, the court DENIES plaintiff's motion.

**Background**

Plaintiff Michael Pate ("Pate") filed suit in the Circuit Court in and for Escambia County, Florida, against State Farm Mutual Automobile Insurance Company ("State Farm") and State Farm Florida Insurance Company, seeking damages in excess of fifteen thousand dollars.[1] (Doc. 1, Exhibit 1). Pate allegedly suffered severe continuing or permanent injuries in a motor vehicle accident with an underinsured driver and now seeks judgment against State Farm under an uninsured/underinsured motorist coverage policy.

---

[1] Defendant State Farm Florida Insurance Company filed a motion to dismiss. (Doc. 4). Because plaintiff did not respond to the motion, the court dismissed State Farm Florida without prejudice. (Doc. 13).

State Farm timely removed the case to this court on June 22, 2010.[2] State Farm identified itself as a citizen of Illinois and identified Pate as a citizen of Florida. According to the notice of removal, Pate's complaint alleges uninsured benefits ranging from $100,000 to $300,000 and that Pate's counsel previously had requested $100,000 in a November 2009 demand letter. Attached to the notice of removal was the complaint, including as an exhibit the uninsured motorist coverage declaration, a copy of the $100,000 demand letter from plaintiff's counsel, and an affidavit from the State Farm representative for Pate's case noting that at the time of the accident Pate had $300,000 in coverage available to him from three stacked uninsured motorist policies.

Pate filed his motion to remand on July 14, 2010, arguing that the amount-in-controversy in this case is $75,000 or less and that State Farm has not met its burden of proving that the amount in controversy exceeds $75,000. Attached to Pate's motion was a copy of a revised demand letter sent to State Farm on July 6, 2010, requesting $75,000 in settlement of his claims. In response, State Farm maintains that the policy information and settlement offers are sufficient to establish the amount-in-controversy by a preponderance of the evidence and that the demand letter sent after the notice of removal was filed should not affect the amount-in-controversy determination.

**Discussion**

"If a state-court complaint states a case that satisfies federal jurisdictional requirements, a defendant may remove the action to federal court pursuant to 28 U.S.C. § 1446(b)." *Roe v. Michelen North America, Inc.*, No. 09-15141, 2010 WL 3033802, slip op. at 4 (11th Cir. Aug. 5, 2010). In the diversity context, federal courts have jurisdiction when the plaintiffs are completely diverse from the defendants and when the amount-in-controversy exceeds $75,000. 28 U.S.C. § 1332(a). The court determines the sufficiency of the amount-in-controversy at the time of removal. *Pretka v. Kolter City Plaza II, Inc.*,

---

[2] Plaintiff served defendants on or about June 2, 2010, and State Farm removed the case on June 22, 2010. Because State Farm timely filed its notice of removal, within 30 days of its receipt of service, the removal is governed by the first paragraph of 28 U.S.C. § 1446(b). *See Roe v. Michelen North America, Inc.*, No. 09-15141, 2010 WL 3033802, slip op. at 4 n.2 (11th Cir. Aug. 5, 2010).

608 F.3d 744, 751 (11th Cir. 2010). When, as here, damages are not specified in the state court complaint, "'a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the. . . jurisdictional requirement.'"[3] *Roe*, 2010 WL 3033802, slip op. at 5 (quoting *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)). The moving party may provide additional evidence, such as business records and affidavits, to satisfy this burden. *Id.* at 5 & n.4 (citing *Pretka*, 608 F.3d at 753-54). "A removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka*, 608 F.3d at 754. The court should look to the complaint to determine the amount-in-controversy, but, if the amount is unavailable from the complaint, the court can look to the notice of removal and other "evidence relevant to the amount in controversy at the time the case was removed." *Id.* (internal marks omitted). A district court may rely on its "judicial experience and common sense" to determine whether a claim satisfies the amount-in-controversy requirement. *Roe*, 2010 WL 3033802, slip op. at 13.

The court concludes that State Farm has shown by a preponderance of the evidence that Pate's claim exceeds $75,000. Although Pate's complaint does not specify damages, it has attached to it an insurance policy with a $300,000 limit. (Doc. 1). Additionally, the Notice of Removal contains a copy of Pate's settlement letter, demanding $100,000 to settle the case. The court may consider a settlement offer in evaluating the amount in controversy. *See Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009) (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994)); *see also Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1213 n.62 (11th Cir. 2007) (noting that "'[w]hile [a] settlement offer, by itself, may not be determinative, it counts for something.'"). While some settlement offers merely reflect "puffing and posturing," others

---

[3] The Eleventh Circuit noted that "preventing a district judge from acknowledging the value of a claim, merely because it is unspecified by the plaintiff, would force the court to abdicate its statutory right to hear the case." *Roe*, 2010 WL 3033802, slip op. at 13 (citing *Pretka v. Kolter City Plaza II, Inc*., 608 F.3d 744, 766 (11th Cir. 2010)).

Case No.: 3:10cv223/MCR/EMT

may provide specific information and reflect a plaintiff's "'reasonable assessment'" of the value of their claim. *Jackson*, 651 F. Supp. 2d at 1281 (*quoting Golden Apple Mgmt. Co. v. Geac Computers, Inc.*, 990 F. Supp. 1364, 1368 (M.D. Ala. 1998)).

Here, Pate's settlement demand letter of November 2009 not only requests a $100,000 in settlement of his claim but also states that "Mr. Pate has agreed to execute a complete release in exchange for the remainder of his UM policy which *we understand to be $100,000.*"[4] (Doc. 1, Exhibit 2) (emphasis added). Additionally, Pate alleges a permanent and continuing bodily injury in the complaint, and the insurance declarations themselves, attached to the complaint, reflect limits of liability at $100,000 per person and $300,000 per accident. (Doc. 1, Exhibit 1). Defendant also included with its Notice of Removal the affidavit of the State Farm representative for Pate's case wherein the agent stated that up to $300,000 in coverage is available to Pate through three overlapping uninsured motorist policies. Finally, Pate cannot point to his revised demand letter of July 6, 2010, requesting only $75,000, as evidence of the value of his claim because the letter was sent after the Notice of Removal was field. The amount-in-controversy is determined based on facts existing at the time of removal. *See Pretka*, 608 F.3d at 751.

State Farm has carried its burden to prove by a preponderance of the evidence that the parties are diverse and the amount-in-controversy is greater than $75,000. Accordingly, plaintiff's motion to remand (doc. 9) is DENIED.

**DONE AND ORDERED** this 25th day of August, 2010.

*s/ M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[4] According to the letter, Pate had already obtained primary underinsured motorist coverage of $100,000 and demanded further payment "for the remainder of his UM policy." (Doc. 1, Exhibit 2.)